**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:07CV-P234-H**

**DAVID TINDELL**                                                                                **PLAINTIFF**

**v.**

**SAL IWEIMRIN** *et al.*                                                          **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff, David Tindell, a convicted inmate formerly incarcerated at the Kentucky State Reformatory, filed this action pursuant to 42 U.S.C. § 1983.[1] On initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Court allowed the following claims to proceed for further development: (1) Plaintiff's Eighth Amendment money damages claim against Defendants Sal Iweimrin, Roy Washington, and Dr. Khayat in their individual capacities for failure to properly treat Plaintiff's "severe asthma, spinabifida, scoliosis, and 20% lung capacity"; (2) Plaintiff's retaliation claim for money damages against Defendants Iweimrin, Clark Taylor, Jeffery Dees, and CO Cornellius in their individual capacities; and (3) Plaintiff's discrimination claim for money damages against Defendants Taylor and Terry Bell. With the exception of Defendant Iweimrin, each remaining Defendant has moved for summary judgment.[2]

For the reasons explained below, the Court finds that Defendants Roy Washington, Dr. Khayat, Clark Taylor, Jeffery Dees, CO Cornellius, and Terry Bell are entitled to summary judgment. Additionally, the Court finds that Plaintiff's claims against Defendant Sal Iweimrin should be dismissed pursuant 28 U.S.C. § 1915(e)(2)(b)(i) and (ii) as frivolous and for failure to

---

[1]Since filing his complaint, Plaintiff has been released from custody.

[2]To date, the United States Marshals Service has not been able to successfully serve Defendant Iweimrin.

state a claim on which relief may be granted.

## I.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that

would be sufficient to require submission of the issue to the jury. The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Id.* at 323-24.

## II.

**A.** **Eighth Amendment Claim**

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666, (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). "Deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The Supreme Court has established a two-part test, with both a subjective and objective prong, to determine whether a prisoner's Eighth Amendment right to adequate medical care has been violated. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). First, the deprivation alleged must be "'sufficiently serious' [in that] a[n] . . . official's act or omission must result in the denial of 'the minimal civilized

3

measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). The second subjective prong requires plaintiff to show that the defendant had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297; *Napier*, 238 F.3d at 742. "To sustain such a claim, it is not necessary that the . . . officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to [a prisoner's] serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). Specifically, to satisfy the subjective prong, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

When prison officials provide medical care in good faith but they nonetheless fail to promptly or completely restore the prisoner to good health, those officials are not "deliberately indifferent" to the prisoner's health. *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). If the prisoner, or even another doctor, disagrees with the treatment provided, so long as it meets minimal standards of adequacy, a mere disagreement over medical judgment states no constitutional claim. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."). A claim that medical treatment was inadequate may present a viable medical malpractice claim under state tort law, but it does not state a constitutional claim. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

4

With this framework in mind, the Court now turns to the specifics of Plaintiff's Eighth Amendment claim. Plaintiff was originally convicted and incarcerated in Calloway County, Kentucky. On November 30, 2005, he was transferred from Calloway County to the Roederer Correctional Complex for medical reasons. The medical movement form indicates that the reason for the transfer was "severe neuromuscular chest wall disease, spinal fusion, scoliosis, and decreased respiratory function." The movement form also indicates that Plaintiff "receives nebulizer treatments, [takes] several meds, and is seen by a respiratory specialist." Plaintiff was later transferred from the Roederer Correctional Complex to the Kentucky State Reformatory due to "multiple [medical] problems requiring immediate attention."

After arriving at the Kentucky State Reformatory, Plaintiff began being seen by Defendant Washington, an advanced registered nurse. At the onset of treatment, Defendant Washington noted that he was providing treatment to Plaintiff for the following problems: "hypertension, hand function disability, scoliosis deformity of the spine, sleep apnea, spina bifida, chronic obstructive lung disease, and muscular dystrophy." As a result of Plaintiff's many chronic conditions, he was prescribed the following: "Albuterol, sulfate, Ensure, Theophylline, Albuterol 0.083%, QVAR, Atenol, and Procardia." In April of 2006, Defendant Washington ordered a series of metabolic and blood panels to continue monitoring Plaintiff's health. In addition, Defendant Washington discussed with Defendant Dr. Khayat whether the Plaintiff should be placed in the nursing care facility Ultimately, based on the test results, Defendant Khayat determined that Plaintiff did not qualify for nursing care at that time.

Prior to entry into the Kentucky State Reformatory, Plaintiff's "free world" doctor had prescribed Plaintiff a portable oxygen device. On June 12, 2006, Plaintiff complained of shortness of air and requested a portable oxygen tank. At that time, Defendant Washington

5

renewed Plaintiff's inhalers and again discussed possible placement within the nursing care facility with Dr. Khayat. On June 28, 2006, Plaintiff again presented to Defendant Washington with complaints of shortness of breath. However, Plaintiff's oxygen saturations on room air alone remained between 97% and 98%. Plaintiff again presented to Practitioner Washington in July of 2006 complaining that he could not breath and that he needed a portable oxygen tank. While his oxygen saturation was at 100%, Defendant Washington nevertheless decided to admit Plaintiff to the medical dorm. On August 7, 2006, Plaintiff again complained that he needed a portable oxygen tank and indicated that he became extremely short of air with exertion. Plaintiff's pulse oxymeter readings still remained good. However, Defendant Washington decided to order a pulmonary function test.

On August 25, 2006, Dr. Fred Kemen admitted the Plaintiff to the medical dorm due to his claims regarding shortness of breath at night. He was admitted overnight for continued monitoring of his oxygen saturation levels and ultimately released back into the yard. In September of 2006, based on the test results Plaintiff was transferred from the nursing care facility to the dorm 12 medical dorm for continuous care. A determination was made at that time that he needed an oxygen tank available twenty-four hours a day and that he would need special sleeping arrangements.

A review of Plaintiff's medical records submitted by Defendants Roy Washington and Dr. Khayat reveals that Plaintiff was treated extensively while incarcerated at the Kentucky State Reformatory. Plaintiff's main complaint is that he was not initially provided with a portable oxygen tank as prescribed by his free world doctor. However, while Plaintiff was not initially provided with a portable oxygen tank, he was never denied access to oxygen.

Plaintiff was kept under almost constant medical supervision. His oxygen rates were

6

monitored regularly, and oxygen was available to him. When Plaintiff complained to Defendant Washington about shortness of breath, Defendant Washington ordered a battery of tests to assess the status of Plaintiff's condition. Eventually a decision was made that Plaintiff did need oxygen available to him twenty-four hours a day, and he was transferred to nursing care. Plaintiff's medical care satisfies the Eighth Amendment. Although the decisions made about Plaintiff's care were not always what he would have preferred, it is clear that Defendants did not ignore Plaintiff's health or refuse to provide him with any treatment. This is simply not a deliberate indifference case.

Defendants Washington and Dr. Khayat are entitled to summary judgment on Plaintiff's Eighth Amendment claim.[3]

**B.     Retaliation Claim**

Defendants Taylor, Dees, and Cornellius have moved for summary judgment on Plaintiff's retaliation claim. Plaintiff alleges that because of his grievances he was "moved approximately six times. Due to constant moves, I have loss my institutional job. I no longer have access to the inmate population or its' programs or activities that the yard receives." Plaintiff also alleges that he was harassed and that disciplinary actions were taken out against him.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To prove a retaliation claim, Plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary

---

[3]In his answers to Defendant Washington's interrogatories, Plaintiff appears to suggest that Defendant Washington should be liable for medical malpractice because he violated the applicable standard of care (DN 42). However, Plaintiff did not make a state law medical malpractice claim against Defendant Washington in his complaint. Accordingly, such a claim is not before the Court.

7

firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by his protected conduct. *Id.* at 394.

A prisoner has a First Amendment right to file grievances against prison officials, if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Thus, Plaintiff satisfies the first element.

Whether Plaintiff could satisfy the second element is debatable. Plaintiff claims that he endured several intra-institutional transfers that caused him to lose his institutional job and certain privileges. Possibly, this could satisfy the second element. However, even assuming that Plaintiff could satisfy the second element with respect to this claim, he has wholly failed to offer any evidence to support the third element.

"To avoid summary judgment on the causation element of a retaliation claim, the plaintiff must present evidence from which a reasonable jury could conclude that his protected conduct was a motivating factor behind the adverse action he suffered and that the officials would not have taken the adverse action in the absence of his protected activity." *See Scott v. Stone*, 254 F. App'x 469, 473 (6th Cir. 2007). Defendants aver that Plaintiff's moves were necessitated by the medical need of not only Plaintiff but that of the other medical inmates and the needs of the facility as well. Defendants explain that Kentucky State Reformatory is the Commonwealth's medical prison and, as such, bed space is limited and varies due to the present needs of the inmate population. Additionally, Plaintiff's medical record is replete with evidence that he continually requested and/or was ordered moved by medical staff monitoring his medical condition for the purposes of medical treatment. Plaintiff offers no proof to rebut the fact that his intra-prison transfers were anything other than for medical necessity.

Plaintiff also alleges retaliation in the form of harassing disciplinary actions. Defendants

submitted Plaintiff's disciplinary record in support of their motion for summary judgment. A review of the record reveals only one disciplinary write-up. Specifically, Plaintiff was found guilty of possessing and trading contraband (a Play Station game that was not checked out to Plaintiff), to which Plaintiff pled guilty. Plaintiff's only punishment was a 90-day canteen restriction. Such a punishment would likely not deter a person of ordinary firmness from filing meritorious grievances. Furthermore, the fact that Plaintiff pled guilty suggests that he was punished for actually possessing contraband and not as a form of retaliation. Plaintiff has failed to offer any evidence to rebut this conclusion. Rather on summary judgment, Plaintiff continues to simply speculate that Defendants retaliated against him. This is insufficient to counter Defendants' summary judgment motion. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[P]laintiff may not respond [to a summary judgment motion] simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.").

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## C.     Disability Discrimination

Plaintiff alleges that Defendants Taylor and Bell discriminated against him as a result of his disability by denying him access to a prison legal aide training program. Plaintiff explains the basis of this claim in his complaint:

> Tindell due to his serious medical problems [was] housed at the State Reformatory, which is designated the Kentucky State Department of Corrections "Medical Facility". When the Inmate Legal-Aide Training is offered each year, it is give at the Luther Luckett Correctional Complex for the inmates housed at the Reformatory. However, Luther Luckett is not equipped for inmates afflicted with serious medical needs such as Tindell. Rather than provide Tindell with equal access to the Inmate Legal-Aide Training, Defendant Terry Bell failed/refused to serve a timely notice to Tindell as to the date, time and location of the primary test give for inmates to

9

qualify for the training.

In their summary judgment motion, Defendants Taylor and Bell argue that Plaintiff cannot prevail on this claim because "an inmate has no constitutional right to be assigned to a particular job." While Defendants are correct, their view of Plaintiff's claim is overly simplistic. While a prisoner is not entitled to be assigned to a particular job or program in a prison, the prison cannot deny a prisoner access to a program based on his disability. Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," §12131(1). The Supreme Court held that this term includes state prisons. *See Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Thus, in theory, had Plaintiff shown that Defendants denied him access to the legal aide training program because of his disability, he would have a claim under the ADA. The exhibits attached to Plaintiff's complaint, however, are fatal to his ADA claim. On October 13, 2006, Plaintiff filed a grievance concerning the legal aide training program. In his grievance Plaintiff states:

10

> The current mail delivery system is not working I have received a time sensitive document late. The test for inmate entrance into the legal aid program was sent out prior to the exam date of September 28th. I did not receive the notice in the mail until October 4, 2006. Thus, making me unaware that I missed a unmake up-able test too late.

The prison responded to the grievance stating:

> In response to [your] Grievance, I Sgt. Jeanette Wall has talked to several of the inmates that were on that list for legal aide training. Those inmates stated that they all got there [sic] memo 2 days before the 1st test date. If mail is not legal mail then we don't treat it like legal mail. Legal Mail is any mail from the courts or from attorney etc. I spoke with Tery Bell CUA and he states that the testing is now closed until year. Inmate Tindell will be able to take the test next year.

The Defendant Bell's memorandum announcing the legal aide training explained that:

> Any KSR inmate that is interested in going to [the] training will need to make a written request to this office no later than Friday, September 20th, 2006 at 4:00 PM. All interested inmates shall be required to take a written Legal Aide Aptitude Test as well as being required to sign a Legal Aide Program Agreement. At this time, I am not sure of how may applicants will be allowed to attend so therefore the inmates with the highest score on the test will be submitted for the training.

Additional exhibits attached to Plaintiff's complaint reveal that Plaintiff's name was on the list of those eligible to take the screening test.

These exhibits plainly demonstrate that Plaintiff was denied entry into the Legal Aide Program because he did not take the required test. It had nothing to do with Plaintiff's disability. While Plaintiff's failure to show up for the test may not have been his fault, it is clear that disability discrimination was not the cause. Accordingly, Defendants are entitled to summary judgment on this claim as well.

### III.

To date, the United States Marshals Service has not been able to serve Plaintiff's complaint on Defendant Sal Iweimrin. Plaintiff's claims of deliberate indifference and retaliation claims against Defendant Iweimrin are identical to his claims against the other

11

Defendants. Based on its review of all the relevant documents (Plaintiff's medical records, grievances, and disciplinary history report), the Court concludes that it would be impossible for Plaintiff to prevail against Defendant Iweimrin under any circumstances. Accordingly, Plaintiff's claims against Defendant Iweimrin will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(i) and (ii) as frivolous and for failure to state a claim on which relief may be granted.[4]

### IV.

In conclusion, the Court will enter a separate Judgment in favor of Defendants Roy Washington, Dr. Khayat, Clark Taylor, Jeffery Dees, CO Cornellius, and Terry Bell and an Order dismissing Plaintiff's claims against Sal Iweimrin pursuant to 28 U.S.C. § 1915(e)(2)(b)(i) and (ii).

Date: August 25, 2009

**John G. Heyburn II, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Counsel of record
Defendant Sal Iweimrin
4412.008

---

[4]Where the plaintiff is proceeding *in forma pauperis*, as in this case, 28 U.S.C. § 1915(e) allows a court to dismiss a "case at any time" if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.